James R. Bergan *vs.* The Central Vermont Railway Company.

Third Judicial District, Bridgeport, October Term, 1909.
Baldwin, C. J., Hall, Prentice, Thayer and Roraback, Js.

There is a prima facie presumption that one who is riding on what is exclusively a freight train is not lawfully there as a passenger, and should he claim the rights of one, the burden of proof is upon him to show that under the special circumstances of the case this presumption has been rebutted.

The conductor of a freight train, in the absence either of actual authority from the railroad company or of any to be implied from custom, has no right to receive passengers upon it, and, if he does, his employer does not become a common carrier of them.

Bergan *v.* Central Vermont Ry. Co.

Courts take judicial notice of the fact that the caboose is a car attached to freight and construction trains for the use of train-hands and workmen.

Only those who have the rights of passengers can take advantage of the presumption of a railroad company's negligence arising from the mere fact of a collision.

Argued November 4th—decided December 17th, 1909.

ACTION for an injury to a passenger occurring on the defendant's railroad, brought to the Superior Court in Fairfield County and tried to the jury (*Gager, J.*). At the close of the plaintiff's evidence, a motion for a nonsuit was granted. A motion to set the nonsuit aside having been denied, the plaintiff appealed. *No error.*

*Israel J. Cohn,* for the appellant (plaintiff).

*Michael Kenealy,* for the appellee (defendant).

BALDWIN, C. J. The complaint alleged that "the plaintiff was a passenger on one of the trains of said defendant company, and lawfully travelling thereon," and was injured by its negligence in causing another train "to collide with the rear end and caboose, or passenger-car, of the train upon which the plaintiff was then a passenger and in which he then was." These averments were denied by the answer.

The evidence which he introduced was to the following effect: He went to the defendant's station at Millers Falls in Massachusetts, intending to take a regular passenger train then about to leave for New London, and having a telegraphic order to its conductor to pass him free. Shortly before the time for its departure, this pass was revoked. He, however, proceeded to have his baggage checked and was intending to travel as a passenger upon the train, but it started before he got on board. He was a telegraph operator by profession, and had been, until that day,

employed as such on a railroad which connected with the defendant's railroad at Millers Falls. A freight train on the defendant's railroad was soon to leave for New London, and he asked the conductor if he would carry him there, saying that he had missed the morning passenger train and "wanted to get to New London that afternoon, money or no money." The conductor assented, and the plaintiff entered the caboose and took a seat in the "monitor," or cupola. Here he rode for some seventy miles until the train stopped at South Willington in this State, where the caboose was wrecked by a rear-end collision with another train of the defendant following on the same track. The conductor had not asked him for a ticket, pass, or fare. It was the plaintiff's understanding of his arrangement with him that "if he wanted to take money, it was his privilege of doing it," and that he (the plaintiff) would pay his fare, if fare were required of him; and otherwise go free.

There is a prima facie presumption that every one riding in a regular passenger-car upon a railroad operated by a common carrier is there lawfully as a passenger. There is a like presumption that one riding on a train which is purely a freight train, upon such a railroad, is not there lawfully as a passenger; and, if he claim the rights of one, the burden of proof is upon him to show that, under the special circumstances of the case, the presumption has been rebutted. That a caboose was part of the train, and that he was seated in that, was insufficient to support this burden. *Eaton* v. *Delaware, L. & W. R. Co.*, 57 N. Y. 382, 389, 15 Amer. Rep. 513. Such a car is defined as one "used on freight or construction trains for workmen or the train crew." Webster's New International Dictionary. The plaintiff had been in the service of a railroad, and must have known what purposes the caboose legitimately serves. It is indeed common knowledge, of which courts take judicial notice. He was neither a passenger nor lawfully

riding in the car, unless by reason of his arrangement with the conductor. That could not avail for the purpose unless the conductor were the authorized agent of the defendant to make such an arrangement. It was for the plaintiff to show, if he could, that the authority had been conferred. The only evidence of that nature was that the flagman, when told by the plaintiff that the conductor had given him permission to ride to New London, said that he could not let him board the caboose until the conductor came up; and that he did not "like to tell anybody to get on, without his authority." This declaration of a railroad servant, even if it could be regarded as a recognition of the conductor's right to receive passengers, could not bind the railroad company. Proof that passengers were customarily received by the defendant or its conductors upon its freight trains would have tended to establish such a right, but none was offered. The conductor of a freight train, in the absence either of actual authority, or of any to be implied from custom, has no right to receive passengers upon it, and, if he does, his employer does not become a common carrier of them. *Murch* v. *Concord Railroad Corporation*, 29 N. H. 9, 61 Amer. Dec. 631. No attempt was made by the plaintiff to show actual authority; and there was nothing on which a jury could reasonably find that there was apparent authority. *Powers* v. *Boston & Maine Railroad*, 153 Mass. 188, 26 N. E. 446.

There was no testimony as to the cause of the collision. It may have occurred through no fault of the defendant. Not being a passenger, the plaintiff, even if he could be regarded as a licensee, could not claim that a presumption of fault arose from the mere fact that a collision occurred. A nonsuit therefore was properly ordered.

There is no error.

In this opinion the other judges concurred.