THADDEUS S. SKLADZIEN *vs.* THE W. M. SUTHERLAND BUILDING AND CONSTRUCTION COMPANY.

Third Judicial District, New Haven, June Term, 1924.
WHEELER, C. J., BEACH, CURTIS, KEELER and KELLOGG, Js.

An owner of real estate is ordinarily under no obligation to anticipate the presence of trespassers or to maintain his premises in a safe condition for their use, but when he knows, or, under all the circumstances, should know that a trespass is being committed, it then becomes his duty to exercise reasonable care to prevent an injury to the intruder.

In the present case, the substantially undisputed evidence showed that, about eleven o'clock in the evening, the plaintiff, without invitation, entered an unfinished theatre building which was being constructed by the defendant and, having been ordered to leave by a workman authorized by the defendant to keep trespassers off the premises, started to depart through the east door by which he had entered, but was directed by the workman to go out by way of another exit on the south side of the building, which led to a narrow passway between the theatre and an adjoining apartment house. This passway, between brick walls forty feet high, was unlighted, and the plaintiff, while in the exercise of due care, fell into an unguarded ditch from six to eight feet long, two feet wide, and from five to six feet deep, which extended about half way across the passway, thus suffering the personal injuries for which he brought this action. *Held:*—

1. That the trial court properly refused the plaintiff's request to charge the jury that, when he was directed to leave by the south door, he was entitled to assume that there was no hidden danger in that direction, because it presupposed the existence of a hidden danger; the proper statement of the legal situation being that he was entitled to assume that he could pass out in safety if he exercised reasonable care.

2. That the trial court should have set aside the verdict for the defendant, since the uncontradicted evidence established, as a matter of law, that the defendant was, and the plaintiff was not, negligent.

Argued June 6th—decided July 28th, 1924.

ACTION to recover damages for personal injuries alleged to have been caused by the defendant's negligence, brought to the Superior Court in New Haven County and tried to the jury before *Hinman, J.;* verdict and judgment for the defendant, and appeal by the plaintiff. *Error and new trial ordered.*

*Charles S. Hamilton,* for the appellant (plaintiff).

*William B. Ely,* with whom, on the brief, was *Edmund Zacher,* for the appellee (defendant).

WHEELER, C. J.  The defendant was engaged in the construction of a theatre in Meriden, and on the night of December 23d, 1921, the plaintiff, accompanied by

three men, went into the theatre uninvited and was ordered out. They left as directed and, while walking along a passway, which was a part of the theatre property, on the way to the street, the plaintiff fell in a ditch across a part of the passway and suffered injuries. The defendant claimed that the plaintiff was a trespasser when upon the theatre premises. The admitted facts fully support this claim.

Plaintiff assigns as errors, the refusal to charge, as requested by the plaintiff, as to the duty owed by the defendant to the plaintiff, assuming that the plaintiff was a trespasser, and the charge as made as to such duty. In neither particular did the trial court err. The charge as given was unexceptionable under our law: "That if the owner or occupant of premises might by proper care have avoided the injury to one, although a trespasser upon the land, he is liable for the results of his negligence. That is, that when the presence of a trespasser in a position of peril becomes known, or by reasonable care ought to become known, the duty is upon the part of the owner or occupant, his servants and agents, of using reasonable care and exercising ordinary precaution to avoid unjury to that person, even though he be a trespasser. The owner or tenant of land has the right to exclusive possession. Whoever violates this right is a trespasser, and such trespasser assumes all risk of danger which is incident to the condition of the premises. As to him the owner does not owe the legal duty of exercising care in keeping his premises in safe condition for his use, and the duty to a trespasser lies within comparatively narrow limits, because the owner of property is not ordinarily bound to anticipate and provide for the presence of trespassers. But the law is so that even if—as applied to this case— even if the plaintiff were a trespasser, and came upon the premises without any invitation, yet after the

defendant, its servants and agents, became aware of his presence, the defendant, by its agents and servants, was bound to exercise reasonable care to avoid injury to the plaintiff. So here it is for you to determine, whether the defendant, in the first place, or the defendant's servant, ordered or directed the plaintiff to pass through the exit in question, and whether the defendant knew, or by the exercise of reasonable care might have known, that this way was unsafe, and what reasonable care required with reference to the conduct of the defendant and its servants toward the plaintiff under the circumstances." *Kalmich* v. *White*, 95 Conn. 568, 572, 111 Atl. 845; *Carlson* v. *Connecticut Co.*, 95 Conn. 724, 730, 112 Atl. 646; *Pastorello* v. *Stone*, 89 Conn. 286, 289, 93 Atl. 529.

Under this charge, the jury were given the governing principles and, afterward, their application. Both the substance and method of presentation were adapted to the understanding of the jury. We find no basis for the criticism that the charge failed to properly present the rule of the burden of proof imposed upon the plaintiff. The request to charge, that "the plaintiff had the right to assume, when he was directed to pass out the side door, that there was no hidden danger, and that he might safely proceed in the way he was directed to go, whether the defendant's agent told him it was safe or not," assumes that there was a hidden danger, and the court did not err in refusing to charge it. Had the request to charge been, in substance, that "if you find the plaintiff was directed by the duly authorized servant of the defendant to pass out of the east door and proceed east along the south passway, he had the right to assume that he could, if in the exercise of reasonable care, so pass in safety," the court would have been bound to have given it. We find no error in the so-called additional appeal.

There remains the error predicated upon the denial of the motion to set aside the verdict.  So far as the proof goes, there is not a single essential fact in plaintiff's. evidence which was contradicted.  Lay witnesses of the plaintiff differ slightly in some of the measurements as given by defendant's surveyor.  As no question is made of the correctness of the surveyor's measurements and statements concerning this location, we accept these among the admitted facts.  The admitted facts were that the defendant was engaged in the construction of a theatre in Meriden, which was located in the rear of and north of buildings containing apartments and stores on the north side of West Main Street, and being at least three stories, forty feet, in height, and the theatre having about the same height; that in the rear of the apartment and store buildings, were a stairway to the cellar and one to the upper floors, porches, an ash bin, cellar entrances, and a galvanized iron enclosure; that the theatre faced westerly, and upon the east of the apartment and store buildings, was a cement paved passageway ten feet wide leading from West Main Street to the rear of the theatre and the stage entrance; that upon the west side of the apartment and store buildings, was a passage fifteen feet wide extending from West Main Street to the theatre and providing the entrance to the theatre; that between the south side of the theatre and the apartment and store buildings, was a passageway from fourteen to eighteen feet in width between the theatre and the porches, stairways, etc., in the rear of these buildings; that there were three doors opening from the theatre into this south passway, each five feet nine inches in width, the east door being twenty-five feet from the stage of the theatre and fifty-one feet from the southeast corner of the theatre and from the nearest point to. the east passway; that opening

from the rear of the theatre, was a door three feet wide, its center being about ten feet from this southeast corner, and another larger door north of this door, its center being about twenty feet from this southeast corner, the larger door opening into the stage, and the smaller door to the aisle south of the stage; that there was on the smaller door a sign "No admittance," and over the larger door, a small electric bulb light, and above that a fire escape, this light being twenty feet from the southeast corner of the theatre; that on the night of the accident, December 23d, 1921, between 10:30 and 11 p. m., there was, extending directly or somewhat diagonally across the south passway, a ditch from six to eight feet long, two feet wide and five to six feet deep, with dirt spread about the opening from twelve to fifteen inches in height; that about four feet beyond the ditch, was a tripod containing a coke fire, and there was no other light along this passageway located between the theatre on the north and the apartment and store buildings on the south.

The plaintiff, Mr. Wilder, an attorney, the plaintiff's brother and Mr. Erskine, an automobile salesman, testified that: On December 23d, 1921, between 10:30 and 11 p. m., they went from West Main Street through this east passway to the rear of the theatre and entered it by the smaller door, and at this time, some workmen were at work on the stage and others were setting up the seats in the auditorium. When they had proceeded some fifteen steps west along the aisle south of the stage, a workman came toward them and ordered them out. They thereupon turned to go out the way they entered, when the workman said, "Don't go that way, go this," and walked over to the east door on the south side of the theatre, opened the door, and they all went out into the south passway. The light from the theatre, when the door was opened, made the passway in front

of the door and the rear of the building opposite visible. After they passed through the door, it was closed and they proceeded on in darkness. One of the witnesses said they proceeded side by side, while another said one or two were walking behind the others. All agreed that it was so dark they could not see where they were going. The passway was slippery with mud. They had gone east some fifteen feet from the door, when those ahead heard a cry and turned and found the plaintiff in this ditch. One of them lighted several matches and they managed to lift the plaintiff out of the ditch. There was no light in the passway except that from the fire in the tripod, and it did not enable them to see the ditch. The three who passed south of the ditch in safety were on the southerly side of the passway, while the plaintiff was walking on the northerly side, and the ditch extended six or eight feet from the south wall of the theatre across, or diagonally across, the northerly half of this passway. The light from the bulb over the doorway in the east passway did not furnish any light at the point where this ditch was.

The defendant offered no evidence in contradiction of any of the testimony offered by the plaintiff, except that its surveyor gave exact measurements of the distances of which the lay witnesses of plaintiff had given estimates. In addition, defendant offered the witness Parsan, who testified that he had been employed during the time of this accident by defendant to keep people out of the theatre, and to keep the furnace going. The witness further testified that he ordered out many people, but could not remember whether he saw plaintiff and his party in the theatre on the night of December 23d, 1921, because there were so many people coming in there and he didn't know who they were; that he had never heard of plaintiff having

Skladzien *v.* Sutherland Building & Construction Co.

fallen in the ditch until about a year after this time; and that he had left this job about a week after the date of the accident.   This witness also testified that the only other persons who ordered people out of the theatre were the labor foreman and the superintendent.

There is no substantial variance in the essentials testified to by the plaintiff's witnesses.   In addition to the plaintiff's party, a reporter, who was a witness for the plaintiff, testified that he saw them in the theatre on this night.   There is nothing improbable about the statement of the plaintiff's witnesses that they were ordered out by a workman, and as Parsan was the only workman having such authority, it is a reasonable conclusion, in the absence of contradiction, that he did order them out and  directed them to leave by the east door of the south passway, instead of by the door opening into the east passway through which they had come.   The plaintiff and his party had the right to assume that defendant knew, or ought to have known, the condition of this passway, and that the workman, in his direction, was exercising reasonable care and not directing them into danger, but this did not relieve the plaintiff, who on the undisputed facts in evidence was a trespasser, from his duty of exercising reasonable care.

The plaintiff testified that Mr. Wilder asked the workman if it was safe to proceed along the passway and he said it was.   Whether this occurred or not makes no difference in defendant's liability.   If its servant directed plaintiff to go over its passway when there was a ditch six or eight feet long by two feet wide running across, or diagonally across, the passway from the south  side of  the theatre, and this, too, without warning the plaintiff of this danger, the defendant must be held to have been negligent, and if plaintiff was injured in consequence, it matters not whether plain-

tiff was a trespasser or not. Unless the plaintiff's own negligence materially contributed to his injuries, defendant's negligence must be held to have been the proximate cause of plaintiff's injuries. The plaintiff was bound to proceed along this passway exercising greater care because of the darkness than if it had been lighted. That the passway was dark is upon the evidence indisputable. It was located between brick walls at least forty feet in height. The single bulb light over the theatre door in the east passway could not possibly throw its beams around the southeast corner of the theatre and down the south passway thirty or thirty-five feet west of this corner to the ditch. The light from the fire of the tripod did not make the ditch visible. There was no other light in this passway. There was no moon. The plaintiff and the three persons with him testified that they did not see and could not see the earth about the ditch, or the ditch itself. One walking in a normal manner, as the evidence shows plaintiff was walking, and falling in this ditch in the darkness, could not be held to have so fallen through his failure to exercise reasonable care. So long as the plaintiff's witnesses' statement of this transaction stands uncontradicted and is supported by the probabilities, we can see no way by which the plaintiff can be legally held to have been negligent. The motion to set aside the verdict should have been granted.

There is error and a new trial is ordered.

In this opinion the other judges concurred.